## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KELLI NUSSBAUM** | ) | |
| | ) | |
| **Petitioner,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE BARON AUTOMOTIVE GROUP, INC.** | ) | |
| **a/k/a BARON BMW,** | ) | REQUEST FOR JURY TRIAL |
| | ) | |
| Serve at:  **Registered Agent Kansas, Ltd.** | ) | |
| **7300 W. 110th St, Suite 150** | ) | |
| **Overland Park, KS 66210** | ) | |
| | ) | |
| **Respondent.** | ) | |

## COMPLAINT

COMES NOW Petitioner Kelli Nussbaum ("Petitioner"), by and through counsel, and for her Complaint against Respondent The Baron Automotive Group, Inc. a/k/a Baron BMW ("Defendant" or the "Dealership"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Kelli Nussbaum is an individual who resides in Blue Springs, Jackson County, Missouri.

2.      The Baron Automotive Group, Inc. a/k/a Baron BMW is a corporation in the State of Kansas and can be served by serving its registered agent, Registered Agent Kansas, Ltd., 7300 West 110th Street, Suite 150, Overland Park, KS 66210.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332 as there is a diversity of citizenship of Petitioner and Defendant, and the amount in controversy exceeds $75,000.00.

4.      Venue is proper in this Court pursuant to 28 U.S. Code § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

5.      This cause of action arises out of a dispute between Petitioner and Defendant concerning the transfer of a pre-owned 2022 BMW x7 m50i motor vehicle, VIN 5UXCX6C02N9J67744 (the "BMW" or the "Vehicle").

6.      On April 9, 2022, Ms. Nussbaum entered into a Purchase Agreement with the Dealership for the purchase of the BMW (the "Agreement"). A copy of this Purchase Agreement is attached to this Complaint as Exhibit A.

7.      On such date, Ms. Nussbaum visited the dealership with Mr. Kaddah, her husband, for the purpose of purchasing another vehicle.

8.      The purchase of the BMW took place after Ms. Nussbaum observed the original owners of the BMW executing a trade-in transaction with the Dealership.

9.      After inspecting the car, Petitioner experienced severe sales pressure from the Dealership to complete that transaction by the end of the business day, to which Petitioner ultimately agreed.

10.     As part of the Agreement, Ms. Nussbaum also entered into a Retail Installment Sale Contract with the Dealership, which included a total sale price of one hundred fifty-two thousand seven hundred sixty-seven dollars and forty-four cents ($152,767.44), consisting of an amount financed of $127,970.50, plus $24,796.94 in finance charges, carrying an annual percentage rate (APR) of 5.93% on the Vehicle loan. A copy of this Retail Installment Contract is attached to this Complaint as Exhibit B.

11.     Subsequently, the Dealership delivered the BMW to Ms. Nussbaum at her Missouri residence on or around April 12, 2022, equipped with a 60-day temporary Kansas tag (the "Temporary Tag").

12.     On or about May 5, 2022, Ms. Nussbaum initiated the process of refinancing her BMW through Mid America Credit Union (the "Credit Union"), with the intent of lowering the Vehicle loan APR from 5.93% to 2.19%.

13.     A title search conducted by the Credit Union, however, revealed the absence of records indicating that an original vehicle title had ever been issued to the Vehicle's previous owner.

14.     In light of this discovery, the Credit Union informed Ms. Nussbaum that refinancing the loan on the BMW to reduce the APR was contingent upon her obtaining a certificate of title for the Vehicle.

15.     Ms. Nussbaum promptly notified the Dealership of the absence of the certificate of title and the need for its expeditious acquisition to facilitate refinancing the Vehicle loan at a lower APR.

16.     Over the ensuing sixty (60) days, Ms. Nussbaum made regular inquiries via email, and in-person visits to the Dealership, in an effort to address the lack of title situation, but her efforts yielded no resolution.

17.     Following the expiration of the Temporary Tag, Ms. Nussbaum sought guidance from the Dealership regarding her ability to drive the BMW with an expired Temporary Tag.

18.      In response, the Dealership provided her with dealer tags to replace the expired Temporary Tag, albeit reluctantly on her part.

19.    On August 16, 2022, Ms. Nussbaum revisited the Dealership to inquire about the certificate of title's status and voiced her concerns about using dealer tags on the Vehicle.

20.    The Sales Manager, Eli Holloway, ("Mr. Holloway"), offered little assistance beyond gratuitous oil changes, which Ms. Nussbaum had already received through an additional purchase.

21.    However, Mr. Holloway assured Ms. Nussbaum that an update on the certificate of title would be provided within ten (10) days.

22.    Subsequently, Ms. Nussbaum received a request from Salesperson Santiago Sanchez ("Mr. Sanchez") to return the BMW to the Dealership for an overdue odometer inspection.

23.    Despite her compliance, the certificate of title was not obtained during this visit to the Dealership, and communication with Mr. Holloway ceased.

24.    On December 8, 2022, a staggering Two Hundred Forty-Four (244) days after the BMW's purchase from the Dealership, and still without a certificate of title, Ms. Nussbaum was pulled over, stopped, and interrogated by a Missouri Highway Patrolman while driving the BMW along I-70 highway due to her use of expired dealer tags.

25.    This incident resulted in embarrassment and distress for Ms. Nussbaum, who has since been unable to legally operate the BMW.

26.    The following day, Ms. Nussbaum contacted the Dealership and recounted the certificate of title's absence.

27.    After a few days, the Sales Manager confirmed that no certificate of title had ever been issued to the BMW's original owners, and suggested that Ms. Nussbaum trade the BMW back into the Dealership for another vehicle.

28.     However, the alternative vehicle offered by the Dealership differed in color, cost more, and had approximately 11,000 more miles on the odometer than the BMW.

29.     Ms. Nussbaum declined the Dealership's proposal to trade in the BMW for the alternative vehicle.

30.     Nearly three (3) months later, Ms. Nussbaum received another request from Mr. Sanchez for an odometer inspection due to the previous paperwork's loss in the mail.

31.     Ms. Nussbaum complied with this additional request, and the second odometer inspection took place on March 2, 2023.

32.     Finally, on April 25, 2023, Three Hundred Eighty-One (381) days after the BMW's purchase, Ms. Nussbaum received notification from the Dealership that the certificate of title was available for transfer.

33.     Petitioner have repeatedly attempted to resolve these issues with Defendant, but as of the date of this filing, no such resolution has occurred.

## COUNT I - FRAUD

34.     Petitioner realleges and incorporates by reference, as if fully set forth herein, all allegations set forth in the preceding paragraphs.

35.     Prior to entering into the Agreement to purchase the Vehicle, Defendants, through their words and actions represented to Petitioner that Defendant could convey legal title to the Vehicle to Petitioner in a timely and efficient manner.

36.     These representations were material and false, and the truth of these representations was Defendant could not convey legal title to the Vehicle in such a manner.

37.     These representations were material, reasonably calculated to deceive, made with intent to deceive, and did in fact deceive Petitioner who relied on, and had the right to rely on, such false representation.

38.     Defendant knew that such representations were false.

39.     Petitioner was ignorant of the falsity of such representation.

40.     As a result of such representations, Petitioner suffered damages.

**WHEREFORE,** Petitioner prays for judgment against Defendant (i) for a reasonable sum of money as is allowable by law in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Petitioner for her damages, (ii) for her actual damages, (iii) for pre- and post-judgment interest at the greatest rate allowed by statute, (iv) for costs herein expended and incurred, (v) for reasonable attorneys' fees, and (vi) for such other relief the Court deems just and proper under the circumstances.

## COUNT II- NEGLIGENT MISREPRESENTATION

41.     Petitioner realleges and incorporates by reference, as if fully set forth herein, all allegations set forth in the preceding paragraphs.

42.     Prior to entering into the Agreement to purchase the Vehicle, Defendants, through their words and actions, represented to Petitioner that Defendant could convey legal title to the Vehicle to Petitioner in a timely and efficient manner.

43.     This statement was false concerning a material fact to the transaction.

44.     Defendant should have known that the representation was false.

45.     Defendant made the misrepresentation to Petitioner in order to induce Petitioner to purchase the BMW.

46.     As a result of such misrepresentation, Petitioner was financially injured by relying on such representation.

**WHEREFORE,** Petitioner prays for judgment against Defendant (i) for a reasonable sum of money as is allowable by law in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Petitioner for their damages, (ii) for their actual damages, (iii) for pre- and post-judgment interest at the greatest rate allowed by statute, (iv) for costs herein expended and incurred, (v) for reasonable attorneys' fees, and (vi) for such other relief the Court deems just and proper under the circumstances.

## COUNT III- BREACH OF CONTRACT

47.     Petitioner realleges and incorporates by reference, as if fully set forth herein, all allegations set forth in the preceding paragraphs.

48.     Petitioner and Defendant entered into an Agreement for the purchase of the BMW on April 9, 2022.

49.     Such Agreement was supported by consideration and formalized by an offer and acceptance.

50.     Defendant has materially breached this Agreement by failing to convey valid title of the Vehicle to Petitioner in a timely and efficient manner.

51.     As a direct and proximate result of the above-described conduct of Defendant, Petitioner has suffered monetary damages in an amount in excess of seventy-five thousand dollars ($75,000.00) to be determined at trial.

**WHEREFORE,** Petitioner prays for judgment against Defendant (i) for a reasonable sum of money as is allowable by law in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Petitioner for her damages, (ii) for her actual damages, (iii) for

pre- and post-judgment interest at the greatest rate allowed by statute, (iv) for costs herein expended and incurred, (v) for reasonable attorneys' fees, and (vi) for such other relief the Court deems just and proper under the circumstances.

## COUNT IV – BREACH OF IMPLIED WARRANTY

52.    Petitioner realleges and incorporates by reference, as if fully set forth herein, all allegations set forth in the preceding paragraphs.

53.    The Dealership, as a seller of goods, implicitly warranted that it had the legal right to transfer title to the BMW to Ms. Nussbaum at the time of the Vehicle sale.

54.    This implied warranty is fundamental to the sale of goods and is a standard provision in such transaction.

55.    The Dealership failed to convey valid title to Ms. Nussbaum upon the sale of the BMW, or within a timely manner thereafter.

56.    This failure was evident when, upon attempting to refinance the BMW, Ms. Nussbaum discovered that no certificate of title had ever been issued to the BMW's original owners.

57.    As a direct result of the Dealership's breach of the implied warranty of title, Ms. Nussbaum suffered significant harm, including but not limited to:

    a.   Inability to refinance the BMW at a lower APR, resulting in financial detriment;

    b.   Legal consequences and embarrassment due to the use of expired dealer tags while operating the BMW;

    c.   Loss of use and enjoyment of the BMW, which was stored away and rendered unusable.

58.     Defendant's failure to convey valid title to Petitioner has directly led to the harm suffered by Ms. Nussbaum.

**WHEREFORE,** Petitioner prays for judgment against Defendant (i) for a reasonable sum of money as is allowable by law in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Petitioner for her damages, (ii) for her actual damages, (iii) for pre- and post-judgment interest at the greatest rate allowed by statute, (iv) for costs herein expended and incurred, (v) for reasonable attorneys' fees, and (vi) for such other relief the Court deems just and proper under the circumstances.

### COUNT V - VIOLATIONS OF K.S.A. 50-623, ET SEQ.

59.     Petitioner realleges and incorporates by reference, as if fully set forth herein, all allegations set forth in the preceding paragraphs.

60.     Kansas passed the KCPA to protect Kansas "consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623(b).

61.     Petitioner purchased the Vehicle in Kansas through a "Consumer Transaction" as defined in K.S.A. § 50-624(c).

62.     Petitioner purchased the Vehicle for personal, family and household purposes, and are a "Consumer" as defined by K.S.A. § 50-624(b).

63.     Defendant, "in the ordinary course of business, solicits, engages in or enforces consumer transactions", and is a "Supplier" as defined by K.S.A. § 50-624(l).

64.     K.S.A. § 50-626 declares it unlawful for any supplier to engage in deceptive acts and practices in connection with a consumer transaction.

65.     K.S.A. § 50-627 prohibits "any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction".

66.     Defendant had a duty to provide Petitioner with legal title to the Vehicle in a timely manner.

67.     Defendant breached its duties to provide Petitioner title to the Vehicle in the time required by law.

68.     By operation of law, the purported sale of the Vehicle is fraudulent and void. K.S.A. § 8-135(c)(7).

69.     Engaging in a fraudulent and void sale of a vehicle to a consumer is an unconscionable act in violation of K.S.A. § 50-627.

70.     Defendant continually represented to Petitioner that Defendant would provide her legal title to the Vehicle, implying and/or expressly representing that this would render the sale lawful.

71.     Defendant's representations that it would provide Petitioner title to the Vehicle in a timely manner were false and deceptive in violation of K.S.A. § 50-626.

72.     Defendant had a duty to provide title to the Vehicle in a timely manner for the benefit of Petitioners.

73.     Defendant violated its duty to provide title to the Vehicle in a timely manner.

74.     Defendant's violation of its duty to provide Defendant and Petitioner with title to the Vehicle is an unconscionable act in violation of K.S.A. § 50-627.

75.     As a direct and proximate result of Defendant's violations of the KCPA, Petitioner has suffered damages.

76.     K.S.A. § 50-634 gives Kansas consumers a private right of action against suppliers who violate the KCPA for actual damages or a statutory penalty of up to $10,000.00.

77.     K.S.A. § 50-634(e) grants Petitioner a claim for reasonable attorneys' fees in bringing this action.

78.     Petitioner may also seek punitive damages for violations of the KCPA. *Equitable Life Leasing Corp. v. Abbick*, 243 Kan. 513, 757 P.2d 304 (1988).

79.     As a direct and proximate result of the acts of Defendant, Petitioner has been damaged in an amount in excess of seventy-five thousand dollars ($75,000.00) to be determined by a jury.

**WHEREFORE,** Petitioner prays for judgment against Defendant (i) for a reasonable sum of money as is allowable by law in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Petitioner for her damages, (ii) for her actual damages, (iii) for pre- and post-judgment interest at the greatest rate allowed by statute, (iv) for costs herein expended and incurred, (v) for reasonable attorneys' fees, and (vi) for such other relief the Court deems just and proper under the circumstances.

### COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

80.     Petitioner realleges and incorporates by reference, as if fully set forth herein, all allegations set forth in the preceding paragraphs.

81.     The Dealership owed a duty of care to Ms. Nussbaum in the sale and delivery of the BMW, including the conveyance of valid title in a timely manner, to ensure her emotional well-being and avoid causing her emotional distress.

82.     The Dealership breached this duty of care through its negligent and/or reckless conduct, including, but not limited to, failing to provide valid title, failing to timely resolve the

title issue, and forcing Ms. Nussbaum to drive with expired dealer tags, which resulted in her being pulled over, stopped, and interrogated by law enforcement and facing legal consequences.

83.    As a direct and proximate result of the Dealership's negligent and/or reckless conduct, Ms. Nussbaum suffered severe emotional distress, including, but not limited to:

a.    Mental anguish, humiliation, and embarrassment resulting from the traffic stop due to expired dealer tags;

b.    Anxiety, stress, and frustration stemming from her inability to refinance the BMW due to the lack of valid title;

c.    Emotional trauma and distress caused by the BMW being rendered unusable and stored away;

84.    The Dealership's negligent and/or reckless conduct was a substantial factor in causing the emotional distress suffered by Ms. Nussbaum.

85.    But for the Dealership's negligence, Ms. Nussbaum would not have experienced the emotional harm outlined herein.

86.    As a direct result of the negligent infliction of emotional distress by the Dealership, Ms. Nussbaum has suffered, and continues to suffer, damages, both economic and non-economic.

**WHEREFORE,** Petitioner prays for judgment against Defendant (i) for a reasonable sum of money as is allowable by law in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Petitioner for her damages, (ii) for her actual damages, (iii) for pre- and post-judgment interest at the greatest rate allowed by statute, (iv) for costs herein expended and incurred, (v) for reasonable attorneys' fees, and (vi) for such other relief the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Petitioner, by and through counsel, hereby demands a trial by jury on all so triable matters.

_/s/ Brian T. Goldstein_____
Brian T. Goldstein      MO Bar 50191
Law Offices of Brian T. Goldstein
11705 W. 164th Place
Overland Park, KS 66221
(913) 558-0228
btgoldsteinlaw@gmail.com
_ATTORNEY FOR PETITIONER_