**LAW 553-KS-eps-14 3/21**

## RETAIL INSTALLMENT SALE CONTRACT
## SIMPLE FINANCE CHARGE

014386

CUST# 198297
STK# N9J67744
DEAL# 112114

**Buyer Name and Address** (Including County and Zip Code)
KELLI JONNETTE NUSSABAUM  *Nussbaum*
1109 NE WATERFIELD VILLAGE DR
BLUE SPRINGS  MO  64014-1835
JACKSON

**Co-Buyer Name and Address** (Including County and Zip Code)
N/A

**Seller-Creditor (Name and Address)**
BARON BMW
9010 SHAWNEE MISSION PKWY
MERRIAM KS  66202
913-722-5100

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2022 | BMW X7 | 2931 | 5UXCX6C02N9J67744 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ **N/A** |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 5.93 % | $ 24796.94 | $ 127970.50 | $ 152767.44 | $ 152767.44 |

(e) means an estimate

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 2121.77 | MONTHLY  beginning  05/24/2022 |
| N/A | $ N/A | N/A |
| | | N/A |

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of the part of the payment that is late. If the vehicle is primarily for personal, family, or household use, the maximum charge for each late payment will be $ __25__.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Returned Check Charge:** If any check you give us is dishonored, you will pay a charge of $ __30__ if we demand that you do so.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI** insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ __N/A__ and is also shown in Item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**APPLICABLE LAW**
Federal law and the law of the state of Kansas apply to this contract. This contract shall be subject to the provisions of the Kansas Uniform Consumer Credit Code (including Article 2, Parts 2 and 5) unless you are a corporation or the vehicle is purchased primarily for business or agricultural use.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term __N/A__ Mos.    __N/A__ Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X __N/A__

### NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

88317*1*KS51S-FI

Buyer Initials X __[initials]__    Co-Buyer Initials X __N/A__

LAW 553-KS-eps-14 3/21 v1    Page 1 of 3

## ADDITIONAL TERMS AND CONDITIONS

1. As used in this Order the terms (a) "Seller" shall mean the authorized Dealer to whom this Order is addressed and who shall become a party hereto by its acceptance hereof, (b) "Purchaser" shall mean the party executing this Order as such on the face hereof, and (c) "Manufacturer" shall mean the Corporation that manufactured the vehicle or chassis, it being understood by Purchaser and Seller that Seller is in no respect the agent of Manufacturer, that Seller and Purchaser are the sole parties to this Order and that reference to Manufacturer herein is for the purpose of explaining generally certain contractual relationships existing between Seller and Manufacturer with respect to new motor vehicles.

2. Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of new motor vehicles of the series and body type ordered hereunder is changed by Manufacturer prior to delivery of the new motor vehicle ordered hereunder to Purchaser, Dealer reserves the right to change the cash delivered price of such motor vehicle to Purchaser accordingly. If such cash delivered price is increased by Dealer, Purchaser may, if dissatisfied therewith, cancel this Order.

3. If the used motor vehicle which has been traded in as a part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery to Purchaser of such motor vehicle, the used motor vehicle shall be reappraised at that time and such reappraised value shall determine the allowance made for such used motor vehicle. If such reappraised value is lower than the original allowance thereof shown on the front of this Order, Purchaser may, if dissatisfied therewith, cancel this Order, provided, however, that such right to cancel is exercised prior to the delivery of the motor vehicle ordered hereunder to the Purchaser and surrender of the used motor vehicle to Dealer.

4. Purchaser agrees to deliver to Dealer satisfactory evidence of title to any used motor vehicle traded in as a part of the consideration for the motor vehicle ordered hereunder at the time of delivery of such motor vehicle to Dealer. Purchaser warrants any such used motor vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted herein. The Purchaser agrees to pay in cash, on demand by the dealer, any balance owed on the trade-in in excess of the amount shown on the front of this buyer's order.

5. Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's orders. Correspondingly, in the event of any such change by Manufacturer, Dealer shall have no obligation to Purchaser to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Purchaser.

6. Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

7. The price for the motor vehicle specified on the face of this Order includes reimbursement for Federal Excise taxes, but does not include sales taxes, use taxes or property taxes based on sales volume, (Federal, State, or Local) unless expressly so stated. Purchaser assumes and agrees to pay, unless prohibited by law, any such sales, use or property taxes imposed on or applicable to the transaction covered by this Order, regardless of which party may have primary tax liability therefor.

8. **MANUFACTURER'S WARRANTY:** ANY WARRANTY ON ANY NEW VEHICLE OR USED VEHICLE STILL SUBJECT TO A MANUFACTURER'S WARRANTY IS THAT MADE BY THE MANUFACTURER ONLY. THE SELLER HEREBY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED.

9. PURCHASER SHALL NOT BE ENTITLED TO RECOVER FROM DEALER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

10. The Purchaser, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payments indicated on the front of this Order.

11. Seller makes no representations concerning fuel economy of the sale unit and any information posted on the sale unit or contained in literature relating to the same reflect the results of tests performed, required or prescribed by government agency, upon which Seller has relied.

12. It is expressly agreed to and understood by Buyer and Seller that in the event of a non-credit transaction, Seller retains a security interest in the purchased vehicle until such time as Buyer has paid the Seller for the vehicle.

Buyer agrees to all the above listed charges.

---

### PLEASE READ CAREFULLY! NOTICE OF ARBITRATION

**If you agree to arbitration, you are giving up your right to go to court for claims and disputes arising from this Contract.**

- You or we can choose to have any dispute between us decided by arbitration, and not by a court or by a jury trial.
- If a dispute is arbitrated, you give up your right to join in as a class representative or class member on any class claim you may have against us, including any right to class arbitration.
- In arbitration, discovery and rights to appeal are generally more limited than in a judicial proceeding, and other rights that you and we would have in court may be unavailable.

**ARBITRATION AGREEMENT:** At your or our election, any claim or dispute in contract, tort, statute or otherwise between you and us or our employees, agents, successors, or assigns that arises out of or relates to your credit application, this Contract or any resulting transaction or relationship including those with third parties who do not sign this Contract, is to be decided by neutral binding arbitration. The election to arbitrate any claim or dispute may be made before or after a lawsuit has been filed, and with respect to any counterclaims that may be filed in a lawsuit. The interpretation and scope of this arbitration agreement, including the arbitrability of a claim or dispute, is also to be decided by neutral binding arbitration, except for the validity of the waivers of class action rights. The validity of the waivers of class action rights shall only be determined by a court of competent jurisdiction.

If you or we choose to arbitrate any claim or dispute, you and we agree that no trial by jury or other judicial proceeding shall take place. In addition, you agree not to participate as a class representative or class member on any class claim that you may have against us, including class arbitration. You and we also agree that any claim or dispute is to be heard and decided by one arbitrator on an individual basis, and not as a class action.

For the arbitration, you or we may choose one of the following arbitration administrators with its applicable rules: the American Arbitration Association ('AAA'), 335 Madison Ave., Floor 10, New York, NY 10017-4605 (www.adr.org) or JAMS ('JAMS'), 1920 Main Street, Suite 300, Irvine, California 92614, www.jamsadr.com. You can get a copy of the rules of these arbitration administrators by contacting them directly or visiting their websites. If for any reason neither the AAA nor JAMS are willing or available to administer any arbitration, you and we shall attempt to reach an agreement on an alternative arbitration administrator or arbitrator. In the event you and we cannot reach such an agreement, an alternative arbitration administrator or arbitrator may be appointed by a court in accordance with the Federal Arbitration Act ('FAA').

Any arbitration hearing will be conducted in the federal judicial district where the dealership from which you purchased the vehicle is located, unless you and we agree otherwise. You and we shall pay the fees and costs specified by the applicable rules of the arbitration administrator selected. As part of any award, the arbitrator may assess the fees and costs associated with any arbitration in accordance with applicable law. You and we shall be responsible for our own attorney fees associated with any arbitration, unless otherwise allowed for under applicable law and awarded by the arbitrator.

The arbitrator will be a lawyer or a former judge. In making an award, the arbitrator shall follow governing substantive law. The arbitrator has the authority to order specific performance, monetary damages and punitive damages or to provide any relief allowed by applicable law. Other than the grounds for review under the FAA, the arbitration award is final and binding on all parties. Any court having jurisdiction may enforce the arbitrator's award.

You and we retain rights to self-help remedies and to seek remedies in small claims court for claims or disputes within that court's jurisdiction, unless those claims or disputes are transferred, removed, or appealed to a different court. You and we retain rights to take measures that do not involve a court or arbitration. These measures include, but are not limited to, setting off against a deposit account, repossessing property, and foreclosing on property. You or we may obtain a temporary court order necessary to prevent harm until the arbitration is completed. By exercising any retained rights or by taking measures that do not involve a court or arbitration, neither you nor we waive the right to arbitrate any claim or dispute.

You agree that the Contract involves interstate commerce, and that the FAA (9 U.S.C. § 1 et. seq.) governs this arbitration agreement and not any state law concerning arbitration, including state law arbitration rules and procedures. This arbitration agreement survives any termination, payoff or transfer of this Contract. Except for the waivers of class action rights, if any part of this arbitration agreement is found to be unenforceable, the remainder is enforceable. If the waivers of class action rights are found to be invalid by a court of competent jurisdiction, then this entire arbitration agreement shall be deemed invalid.

By signing the Contract, you and we understand and agree to be bound by its terms, and expressly waive our rights to a trial by jury and judicial process, and review, except as allowed by law. Nevertheless If you do not want this arbitration agreement to apply, you may reject it by mailing a written notice to us at:

Group 1 Automotive, Inc. Attn. General Counsel, 800 Gessner, Suite 500, Houston Texas 77024, that describes the Contract and that states you are rejecting the arbitration agreement. A rejection notice is only effective if it is signed by each borrower, and the envelope that it is sent in is postmarked no more than five calendar days after the Contract. If you reject the arbitration agreement, it will not affect any other terms of the Contract. If you do not properly reject the arbitration agreement, it will be effective as of the date of the Contract.

**Caution:** It is important that you read this arbitration agreement thoroughly before you sign this Contract. By signing it, you acknowledge that you have read and understand this arbitration agreement, and have received a copy of it. If you do not understand something in this arbitration agreement, do not sign this Contract; instead ask your lawyer.

**OTHER IMPORTANT AGREEMENTS**

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose as the law allows.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **Your right to refinance a balloon payment.** A balloon payment is a scheduled payment that is more than twice as large as the average of your earlier scheduled payments. If you are buying the vehicle primarily for personal, family or household use, you have the right to refinance the balloon payment when due without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service, or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay what you owe at once after we give you any notice the law requires. Default means:
      • You do not pay any payment on time; or
      • You give false, incomplete, or misleading information during credit application, you start a proceeding in bankruptcy or one is started against you or your property, or you break any agreements in this contract, except that if you bought the vehicle primarily for personal, family or household purposes, we will only treat these events as defaults if they significantly impair the prospect of payment, performance, or realization of the collateral. We bear the burden of establishing the prospect of significant impairment.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** You will pay our reasonable costs to collect what you owe, including court costs, attorney fees and collection agency fees, but you will not have to pay both attorney fees and collection agency fees. Collection costs will not include costs incurred by our salaried employees and will not exceed 15% of the amount you owe.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you after we give you any notice the law requires. We may only take the vehicle if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us unless the law provides otherwise. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, main-tenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   The following paragraph does not affect any warranties covering the vehicle that the vehicle manufacturer may provide. It only applies if you are an organization.
   **Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

5. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

88317*1*KS51S-FI

Buyer Initials X _____  Co-Buyer Initials X __N/A__

04/09/2022  04:10 pm

LAW 553-KS-eps-14 3/21 v1    Page 2 of 3